Elizabeth D. Tate, SBA # 32659
2953 North 48th Street
Phoenix, AZ 85018-7749
Phone: (602) 670-4653
Fax: (602) 595-5959
E-mail: attorneyelizabethtate@yahoo.com
Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Kevin W. Glass,**<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br><br>**AsicNorth, Inc., an Arizona Corporation**<br><br>　　　　　　Defendant. | **Case #**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Kevin W. Glass ("Glass"), by and through Elizabeth D. Tate, his undersigned attorney of record, submits this Complaint and Demand for Jury Trial pursuant to Federal Rules of Civil Procedure, Rules 7(a)1, 8(a & d), 15(a), and 38(a & b).

## 1. Parties, Claims, and Jurisdiction

1. The Plaintiff, Kevin W. Glass (Glass), is, and has been always material to this Complaint, an adult resident of Maricopa County, Arizona.

2. At all times material to this Complaint, Glass has suffered from three disabilities: (1) carpel tunnel (2) COPD; and (3) asthma:

3. At all times material to this Complaint, Glass has been:

   (A) An employee of Defendant AsicNorth, Inc. as that term is defined and used in 42 U.S.C. 2000e(f), and 42 U.S.C. 12111(4);

   (B) A "qualified individual with a disability" as that term is defined and used in 42 U.S.C. 12111(8) and 42 U.S.C 12112(a);

4. Defendant AsicNorth, Inc. ("AsicNorth") has been always material to this Complaint:

   (A) A design service business providing integrated circuit design services, engaged in interstate commerce employing more than 300 persons, with a place of business in Maricopa County, Arizona;

   (B) The employer of Glass as that term is used and defined in 42 U.S.C. 2000e(b), and 42 U.S.C. 12111(5)(A)

5. Glass seeks relief against the Defendant herein on his claims arising under federal statutes and state law as follows:

   Count One: Disability Discrimination in violation of the A.D.A., 42 U.S.C. 12112

   Count Two: Retaliation in violation of the ADA, 42 U.S.C. 12203

   Count Three: Interference with Business Expectancy

6. Based upon the foregoing, this Court is the proper venue is proper pursuant to 28 U.S.C. 1692(b).

## 2. Additional fact allegations supporting claims

7. AsicNorth employed by Glass as a Senior Engineer from January 12, 2016 until he was fired without good cause on July 1, 2016. Jeff Jorvig, who was design manager at the time negotiated Glass' terms of employment.

8. Glass' doctors diagnosed Glass with carpel tunnel, COPD, anemia and asthma that affected Glass' ability to engage in repetitive motion, strength and endurance, a disability affecting a major life activity of moving, motion and breathing.

9. Glass is a qualified individual, qualified to perform the essential functions of his job with a disability, within the meaning and intent of the ADA in that he has a physical impairment that substantially limits one or more of his major life activities involving endurance, repetitive movement and breathing. Glass did not reveal to AsicNorth the fact that he is disabled at the time Jorvig hired him.

10. AsicNorth hired Glass with the understanding that Glass would work on an RF radio project. However, on January 18, 2018, four days into Glass' employment, AsicNorth still had not given Glass any work to do. Glass emailed Steve Hogarth, lead engineer in North Carolina to ask him for work to do. Hogarth assigned Glass a very difficult design job without clear direction. Hogarth wanted Glass to design an extremely small, low power chip to be placed in contact lenses. Hogarth did not tell Glass what was in the chip, a deadline for getting the chip designed or when the client planned to manufacture the chip. Nevertheless, Glass began working on the chip design project.

11. When Glass began working on the project, Glass learned that AsicNorth had no net listing software and no access to Cadence Analog

Design Environment which would have made the project go faster by automatically populating the net list.  Without net listing software and Cadence, Glass had to create the net list by hand by typing it into a list. AsicNorth's software and methods were from the 1990s and outdated.

12.    In February of 2016, one month into the project, Steve Stratz, AsicNorth's Vice President, approached Glass to speak about the fact that Glass took breaks and moved and walked around his workspace.   Glass for the first time, informed Stratz about his disability, explaining that creating the net lists by hand required a lot of typing and aggravated his carpel tunnel.  Glass also informed Stratz that his work station had poor ergonomics.  At that time, Glass made his first accommodation request. Glass requested a key board tray, ergonomic chair and adjustable table from which to work. Glass also inquired about the Company's outdated software. Stratz informed Glass that the Company did not have Net lister for AFS, up-to-date software, to save money.  Glass needed AsicNorth to install the latest software to eliminate manually creating the list to lessen typing.  But knowing the cost, Glass only asked for the keyboard tray and ergonomic work station which would be inexpensive. AsicNorth made no response to Glass' first request for accommodation.

13.    In March of 2016, Glass still worked on the chip design project. Horgath still had not provided Glass with crucial information about the project.  Horgath needed to inform Glass of the design schedule, design methodology, design review  the formats and give direction on how to organize schematic and simulation directories. Also, in March of 2016, AsicNorth required its employees to participate in a charity outing to work at

a farm.  At that time, Glass informed Jorvig that Glass could not participate because his disabilities prevented him from shoveling and lifting.  This was Glass' second request for accommodation of a key board tray and ergonomic work station.  Without a response, Glass continued to work on the chip design project without accommodation.

14. In April of 2016, AsicNorth assigned a Cory Barrows, Director, to Glass' chip design project.  Barrows conducted weekly telephonic meetings.  At the first meeting, Barrows informed Glass that he was satisfied with Glass's work.  During the meeting on the second week of April, Barrows nit-picked Glass' work.  Barrows insisted that Glass justify why Glass used a certain transistor for the regulator cascode transistor.  Glass explained that that he chose the transistor that worked using extensive computer simulations.  Barrows then impatiently told Glass he wanted the chip project design done by the end of the week.   Glass informed Barrows to do the job properly, he needed two weeks.  Barrows told Glass to just give him what him, Glass, had done at the end of the week.  Barrows then hung up on Glass.  When Glass tried to call back, Glass learned Barrows had locked him out of the meeting.

15.     By the end of the third week of April 2016, Glass delivered the chip design project as Barrows requested, even providing more extensive simulations than requested.  Horgath commented, that the inclusion of more simulations must have really aggravated Glass' carpel tunnel.    During the fourth week of April, Glass was assigned another difficult project involving the anatomy of the eye.  Glass presented a power point presentation that impressed Jorvig and others. On April 28, 2016, Barrows made a visit to

Glass' office in Phoenix. Glass planned to stay home sick that day because of an asthma flare-up. However, Glass came into the office anyway to meet Barrows. Glass showed Barrows his work station and made a third request for a keyboard tray and ergonomic work station. Glass then went home sick with asthma.

16. Less than three weeks later, on May 18th, 2016, Jorvig placed Glass on a performance improvement plan, "PIP". Puzzled, Glass asked why he was placed on a PIP when he had been doing good work. Jorvig stated the PIP came from Barrows. Barrows accused Glass of insubordination in the PIP. Glass contacted Judy Stohl, HR representative to inform her that Barrows unfairly placed him on a PIP because Glass had been doing good work and met the chip design project deadline despite not getting methodology or getting a timetable for the project. Glass also informed Stohl that he had been requesting an accommodation which the Company never addressed. Glass informed Stohl that he was going to file an EEOC charge because the Company discriminated against him. On May 20, 2016, Glass notified Jorvig of Glass' EEOC charge.

17. On May 23, 2016, Stratz telephoned Glass. Glass explained how the PIP was unfair. Stratz appeared angry that Glass had filed the EEOC charge but informed Glass that there was flexibility in the PIP and that no one had ever been fired because of being placed on a PIP. On the same day, Glass returned from lunch to find that someone had placed rat feces on his chair.

18. On June 9th, 2016, Stroh telephoned Glass to discuss Glass' disability. Glass then made a fourth request for a keyboard tray and ergonomic work

station. Glass explained to Stroh that AsicNorth's lack of up to date software caused a lot of typing to aggravate Glass' carpel tunnel. Glass also informed Stroh that his asthma and COPD affected his endurance. Stroh listened but AsicNorth still did not accommodate Glass' disabilities. On June 21, 2016, Glass made a fifth request for accommodation.

19. On July 1, 2016, ten days later, Jorvig called Glass into a meeting with three witnesses to fire Glass. One large witness was positioned at the end of the table near the door. Jorvig claimed he was firing Glass because Glass missed PIP deadlines on two minor items that were not well defined but completed. Jorvig hollered at Glass and when Glass would try to speak, Jorvig spoke over Glass. Glass informed Jorvig he would contact EEOC to amend his charge to include his firing. Jorvig loudly cursed at Glass as Glass departed from the building. Glass amended his EEOC charge on December 23, 2016.

20. Ever since Glass's firing AsicNorth retaliated against Glass in violation of the ADA when Glass engaged in the protected activity by reporting disability discrimination and filing his EEOC charges. AsicNorth also interfered with Glass' attempts to get employment. In November of 2018, Glass applied for job and Glass had a bona fide expectation that the interview would lead to employment. The interviewer on the second phone interview asked Glass if he was serious about the job, and to commit that if offered he would take it. Glass agreed he would take the job if offered. Glass traveled for an onsite interview with the employer. The interview went well. A job formal job offer never materialized, after contacting ASICNorth, which was listed on Glass's resume. Glass called the interviewer. The interviewer

refused to answer Glass' questions. Given the circumstances where Jorvig cursed Glass when Jorvig fired Glass, Jorvig would have informed Glass' interviewers that Glass had been fired for cause when in fact he was not. AsicNorth thwarted Glass' attempt to secure employment with major companies. Glass has only been able to secure contract work.

22. On October 11, 2017, another recruiter from a major company that hires engineers contacted Glass about a job. The recruiter set a phone interview for Glass. Glass had a bona fide expectation that the interview would lead to employment. Glass sent the recruiter his resume. The recruiter checked Glass' employment history. Glass called to find out about the phone interview. The interviewer rudely said to Glass, "never contact me again." Since leaving AsicNorth's employment, Glass applied for over 60 jobs but has not been able to secure direct employment. The opportunities disappear when prospective employers check his job history with AsicNorth. AsicNorth is aware that Glass is attempting to find another job. AsicNorth is thwarting Glass' attempts to get other employment.

21. AsicNorth repeatedly violated the American with Disabilities Act by not engaging in an interactive process when it learned of Glass' disability in February of 2016. Glass requested that AsicNorth accommodate his disability 5 times but to no avail. AsicNorth had a duty under the ADA to engage in an interactive process with Glass. HR should have contacted Glass in February of 2016 when Glass first informed AsicNorth of his disabilities and after each request thereafter.

22. AsicNorth has failed and refused to reasonably accommodate Glass' disability which could have been accommodated by providing a key board tray and ergonomic workstation with little cost.

23. AsicNorth could have accommodated Glass' disabilities without undue hardship.

24. AsicNorth, in contravention of the ADA, retaliated against Glass for engaging in the protected activity of reporting disability discrimination.

25. Based upon the events alleged herein, Glass timely filed a charge of discrimination with the United States Equal Employment Opportunity Commission, "EEOC", under charges number 540-2016-02048 and 540-2017-00722 concerning discrimination and retaliation in his employment because of disability as described above. Glass received his notice of right to sue on December 22, 2017. See Attached Exhibit 1, 2 and 3 charges and notice of right to sue.

### 3. Demand for Trial by Jury

Glass demands a trial by jury on her claims pursuant to the U.S. Constitution Seventh Amendment and FRCP Rule 38.

### 4. Relief Requested

Count One: Disability Discrimination in violation of the A.D.A., 42 U.S.C. 12112

1. Compensatory and punitive damages
2. Injunctive relief including back pay and front pay
3. Reasonable attorneys' fees
4. Taxable costs

### Count Two: Retaliation in violation of the ADA, 42 U.S.C. 12203(a)

1. Injunctive relief including back pay and front pay
2. Reasonable attorneys' fees
3. Taxable costs

### Count 7:  Interference with Business Expectancy

1. General tort damages
2. Punitive damages
3. Taxable costs pursuant to FRCP Rule 54(d) 1, LRCiv 54.1 and 28 U.S.C. 1920

Respectfully submitted this 21, day of March, 2018.

s/Elizabeth D. Tate
Elizabeth D. Tate, Attorney for Plaintiff

**Attached: Exhibits One through Three**