1   John L. Condrey  (SBN:  026220)
    Annelise M. Dominguez  (SBN:  033299)
2   **GORDON REES SCULLY MANSUKHANI, LLP**
    One Renaissance Square
3   Two North Central Avenue, Suite 2200
    Phoenix, AZ 85004
4   Telephone:  (602) 794-2474
    Facsimile:  (602) 265-4716
5   jcondrey@grsm.com
    adominguez@grsm.com
6

7   Attorneys for Defendant
    ASIC North, Inc. a Vermont Corporation
8

9               **IN THE UNITED STATES DISTRICT COURT**

10              **FOR THE DISTRICT OF ARIZONA**

11
    Kevin W. Glass                          )   **CASE NO.  2:18-cv-00898 DLR**
12                                          )
                        Plaintiff,          )
13                                          )   **DEFENDANT ASICNORTH, INC.'S**
                                            )   **MOTION FOR SUMMARY**
14      vs.                                 )   **JUDGMENT OR ALTERNATIVELY**
                                            )   **FOR SUMMARY ADJUDICATION**
15                                          )
    AsicNorth, Inc., an Arizona Corporation )
16                                          )
                        Defendant.          )
17  _____)

18

19          Defendant ASIC North, Inc. moves for summary judgment on plaintiff Kevin W.

20  Glass's discrimination and retaliation on the basis of disability under the Americans with

21  Disabilities Act and interference with business expectancy claims on the grounds that Mr.

22  Glass fails to state a valid claim for relief. Mr. Glass alleges that he was discriminated

23  and retaliated against on the basis of his disability, but his employment was not

24  terminated in response to the charges of discrimination filed with the EEOC.

25  Additionally, Mr. Glass does not have evidence connecting any actions of ASIC North to

26  his inability to obtain employment. Summary judgment is appropriate.

27  / / /

28  / / /

**TABLE OF CONTENTS**

**Page**

I.    Relevant Factual Background ................................................................................ 1

II.   Argument ............................................................................................................... 3

    A.    ASIC North Did Not Discriminate Against Mr. Glass Because of a
        Disability and Did Not Deny Any Accommodation to Mr. Glass ............... 3

        1.    Legal Standard ................................................................................. 4

        2.    Mr. Glass Was Not Qualified to Perform His Job ........................... 4

        3.    There Is No Connection Between the Claimed Disability and
            the Basis for Termination ................................................................. 5

    B.    Mr. Glass Has Failed to Exhaust His Administrative Remedies As to
        His Undisclosed Disabilities ...................................................................... 6

    C.    Mr. Glass Cannot Present Evidence to Support the Retaliation Claim......... 7

    D.    Mr. Glass Cannot Provide Evidence to Support the Tortious
        Interference with Business Expectancy Claim............................................. 9

    E.    Mr. Glass Has No Evidence to Support Punitive Damages ....................... 11

III.  Conclusion.......................................................................................................... 11

1    **I.     Relevant Factual Background**

2           ASIC North is a design house and staffing company that provides expert

3    engineering services for customers with semiconductor-based products and needs. ASIC

4    North hired Mr. Glass as a Senior Circuit Design Engineer to work in its Tempe, Arizona

5    office. (Ex. 9 at ¶ 2). Senior Circuit Design Engineer is the highest level of Circuit

6    Design Engineers. (*Id.*) Mr. Glass' first day of work was on January 12, 2016. (*Id.* at ¶ 3).

7    Mr. Glass was assigned two projects during his employment and he struggled with both

8    projects. (*Id.* at ¶¶ 4-5). The persons responsible for managing aspects of Mr. Glass' work

9    were Integrated Circuit Design Manager Jeff Jorvig, Director of Engineering Corey

10   Barrows, and Senior Circuit Design Engineer Steve Hoggarth. (*Id.* at ¶ 6). Mr. Glass was

11   expected to run each project from start to finish, which required technical expertise, the

12   ability to work with other professionals within ASIC North in a cooperative manner, and

13   the ability to represent ASIC North in communicating directly with clients. (*Id.* at ¶ 5).

14          Mr. Barrows reported to Mr. Jorvig that Mr. Glass fell below the standard for a

15   senior engineer. (Ex. 9 at ¶ 7). A Written Warning was issued to Mr. Glass on May 18,

16   2016, addressing the issues of his substandard work performance. (Ex. 9 at ¶ 9; Ex. 13).

17   Mr. Glass disputed every aspect of the Written Warning and he communicated directly

18   and immediately with Judy Stroh of Human Resources about it. (Ex. 9 at ¶ 11). On May

19   20, Mr. Glass filed the first of two charges of discrimination with the EEOC. (Ex. 8). The

20   charge identifies discrimination based on retaliation and disability. (*Id.*) Mr. Glass

21   referenced the Written Warning in the charge. (*Id.*)

22          In or around June of 2016, Mr. Glass requested accommodations that included

23   ergonomic improvements to his work area to help with stress issues on his hands, wrists,

24   and forearms. (Ex. 6 at 2). Around June 21, 2016, Chris Hughes of ASIC North evaluated

25   Mr. Glass' work station and gave him a replacement chair. (Ex. 23 at 1). Mr. Glass also

26   requested an under the desk, pull out keyboard tray. (Ex. 23 at 1). Around June 22, 2016,

27   Mr. Glass told Mr. Hughes that the new chair was giving him good back support but still

28   did not help his wrists. (Ex. 18 at 2). In response, ASIC North purchased a Fellowes

1    Underdesk Keyboard Drawer, Sliding Drawer Bracket on June 24, 2016. (Ex. 18 at 1; Ex.

2    19). The only accommodations Mr. Glass requested were to his work space. (Ex. 20 at

3    79-80, 83-84, 101, 149). ASIC North accommodated Mr. Glass' requests.

4            The decision was made to terminate Mr. Glass' employment on July 1, 2016. (Ex.

5    1 at ¶ 8, Ex. 9 at ¶ 13). An Exit Interview was conducted with Mr. Glass, Mr. Jorvig,

6    Design Manager M. Chris Hughes, and Ms. Stroh by telephone. Mr. Jorvig kept a

7    summary of the Exit Interview. (Ex. 9 at ¶ 13).

8            Mr. Glass filed a second charge of discrimination on December 23, 2016. (Ex. 7).

9    Ms. Stroh learned of the second charge of discrimination after the Notice of Charge of

10   Discrimination was sent by the EEOC on December 28, 2016. (Ex. 1 at ¶ 9). The second

11   charge identified discrimination based on retaliation, disability, and age. (Ex. 7). Mr.

12   Glass also asserted that he had been given unfavorable references since his discharge.

13   (*Id.*) He claims that he applied for a job and had a bona fide expectation that the interview

14   would lead to employment but that a formal job offer never materialized after the

15   prospective employer contacted ASIC North, which was listed on Mr. Glass' resume.

16   (Ex. 20 at 122-23, 150-52, 156-57). No manager or technical lead on Mr. Glass' projects

17   has been asked for a reference, and none have given a reference or any other information

18   concerning Mr. Glass since he left the employment of ASIC North. (Ex. 1 at ¶ 13). All

19   relevant personnel have been instructed to send any reference requests to Human

20   Resources, and no requests have been received. (Ex. 1 at ¶ 13). It is the policy of ASIC

21   North not to provide positive or negative references, but rather to confirm dates of

22   employment only and all relevant personnel are advised to and required to follow the

23   policy. (Ex. 1 at ¶ 13).

24           Mr. Glass is suing ASIC North alleging disability discrimination, retaliation in

25   violation of the ADA, and interference with business expectancy arising out of his

26   employment with ASIC North. (Doc. 1 at ¶ 5). Mr. Glass asserts that he was

27   discriminated against on the basis of his disability. He also claims that ASIC North

28   retaliated against him in response to reporting to the EEOC. (Doc. 1 at ¶ 20). Mr. Glass

1    concludes that ASIC North has interfered with his attempts to get employment. (Doc. 1 at

2    ¶ 20). But the evidence shows that Mr. Glass' requests for work space accommodations

3    were made. Mr. Glass received a Written Warning before he lodged a charge with the

4    EEOC. And Mr. Glass has not and cannot provide evidence, beyond his own assertions,

5    that ASIC North has interfered in his ability to gain employment.

6    **II.    Argument**

7         Mr. Glass asserts claims arising from his employment with ASIC North and ASIC

8    North's supposed post-employment actions. Mr. Glass relies heavily on his disabilities,

9    but this case is not about Mr. Glass' disability because ASIC North made the work space

10   accommodations that Mr. Glass requested and all of its employment decisions were based

11   on his job performance.

12   **A. ASIC North Did Not Discriminate Against Mr. Glass Because of a
     Disability and Did Not Deny Any Accommodation to Mr. Glass**

13

14        Mr. Glass alleges that he was discriminated against on the basis of his disability.

15   (Doc. 1 at ¶ 5). Mr. Glass cannot, however, establish a *prima facie* case of discrimination

16   because he cannot show he suffered an adverse employment action or that he was treated

17   less favorably than other similarly situated employees without disabilities.  Even if Mr.

18   Glass could establish a *prima facie* case of disability discrimination, he cannot overcome

19   ASIC North's non-discriminatory reasons for the actions at issue.  As described below,

20   Mr. Glass was not qualified to perform the job he was hired to perform based on the

21   Written Warning, PIP, and performance evaluations documented in contemporaneous

22   documents. Mr. Glass also cannot show that there is a connection between the claimed

23   disability and the basis for termination of his employment. Additionally, Mr. Glass never

24   informed anyone at ASIC North of his disability, so ASIC North could not have

25   discriminated against him on the basis of his disability where it had no knowledge of his

26   disability. Instead, based on the undisputed facts, ASIC North is entitled to summary

27   judgment on Plaintiff's discrimination and failure to accommodate claims.

28   / / /

1

**1.  Legal Standard**

2    The ADA provides that "no covered entity shall discriminate against a qualified

3    individual with a disability because of a disability." 42 U.S.C. § 12112(a). Under this

4    framework, a plaintiff must establish a *prima facie* case of discrimination by showing

5    she: (i) is a member of a protected class; (ii) is qualified for her job; (iii) suffered an

6    adverse employment action; and (iv) was treated less favorably than other similarly

7    situated employees outside of her protected class. *McDonnell v. Douglas Corp. v. Green*,

8    411 U.S. 792, 802 (1973).  Mr. Glass alleges that the disabilities he suffers from include

9    carpel tunnel, COPD, anemia, and asthma. (Doc. 1 at ¶ 8). An action is an "adverse

10   employment action" if it materially affects the compensation, terms, conditions, or

11   privileges of employment.  *See Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d

12   1115, 1126 (9th Cir. 2000). If an employer asserts legitimate, non-discriminatory reasons

13   for its adverse employment action, the employee must then prove that the reason

14   advanced by the employer is a mere pretext. *See Aragon v. Republic Silver State*

15   *Disposal, Inc.*, 292 F.3d 654, 659 (9th Cir. 2002); *Wallis v. J.R. Simplot Co.*, 26 F.3d 885,

16   889 (9th Cir. 1994).

17   He claims that ASIC North violated the ADA by not engaging in an interactive

18   process with him and failing to accommodate his disability. (Doc. 1 at ¶¶ 21-22). Mr.

19   Glass' claims are not supported by direct or circumstantial evidence that ASIC North

20   discriminated against Mr. Glass beyond his own allegations.

21

**2.  Mr. Glass Was Not Qualified to Perform His Job**

22   The evidence shows that Mr. Glass was not qualified to perform the job that he

23   was hired to perform. On May 18, 2016, two days before Mr. Glass filed the first charge

24   of discrimination, he was issued a Written Warning and placed on a Performance

25   Improvement Plan (PIP). (Ex. 9 at ¶ 9; Ex. 13). The Written Warning documents that Mr.

26   Glass demonstrated numerous work performance issues, including difficulty listening and

27   considering advice from team lead and management, failing to communicate effectively

28   with the development team, spending more than the allotted time on projects, and

1   producing late, poorly summarized, and incomplete design review documentation. (Ex.

2   13). Mr. Glass was placed on a PIP where his work would be closely monitored. (Ex. 13).

3   He was required to demonstrate immediate improvement and the PIP provided dates and

4   milestones that he was expected to meet. (Ex. 13). Mr. Glass disputed every aspect of the

5   Written Warning. (Ex. 9 at ¶ 11).

6           Mr. Glass filed the first charge of discrimination on May 20, 2016. (Ex. 1 at ¶ 5;

7   Ex. 8). After the first charge, ASIC North continued to treat Mr. Glass as it did before the

8   charge and consistent with the PIP. Mr. Jorvig followed and documented Mr. Glass'

9   performance during the PIP period. (Ex. 9 at ¶ 12). He prepared reports on Mr. Glass'

10  performance and sent them to Ms. Stroh and Mr. Glass' other supervisors. (Ex. 9 at ¶ 12;

11  Ex. 14). Mr. Glass' performance did not improve. Mr. Jorvig also prepared a K Glass PIP

12  Summary, dated June 28, 2016, which is a high-level summary of Mr. Glass' work for

13  the PIP period and a final summary of his observations and conclusions regarding the

14  PIP. (Ex. 9 at ¶ 12). Although there were positive aspects of the K Glass PIP Summary,

15  Mr. Jorvig's conclusion was that Mr. Glass did not successfully complete the PIP and

16  was not working at the level of a senior circuit design engineer. (Ex. 9 at ¶ 12). Based on

17  Mr. Glass' failure to successfully complete the PIP and issues with his job performance,

18  the decision was made to terminate Mr. Glass' employment on July 1, 2016. (Ex. 9 at ¶

19  13). Mr. Glass has also failed to show that his claimed disability substantially limits his

20  work. He testified that since his employment ended with ASIC North, he worked contract

21  jobs of varying length for 40 hours per week. (Ex. 20 at 61-65). His testimony defeats his

22  claim of being substantially limited during the relevant time period.

23          **3.       There Is No Connection Between the Claimed Disability and the**
            **Basis for Termination**
24

25          ASIC North cannot have discriminated against Mr. Glass because it had no

26  knowledge of his disability. Mr. Glass did not request any accommodation and never

27  raised the issue of any disability before he filed the first charge of discrimination, dated

28  May 20, 2016. ASIC North first became aware that Mr. Glass claimed to have a disability

1    when it received the charge. (Ex. 1 at ¶ 5). The charge identified that Mr. Glass alleged

2    discrimination based on a disability, but did not identify his disability. (Ex. 8). In

3    response, Ms. Stroh inquired about the issue to Mr. Glass' supervisors and technical leads

4    on June 1, 2016. (Ex. 1 at ¶ 5; Ex. 4). The email responses that she received show that

5    Mr. Glass had not disclosed a disability to his supervisors or technical leads. (Ex. 4). Ms.

6    Stroh spoke with Mr. Glass on June 9, 2016, regarding his claimed disability. (Ex. 1 at ¶

7    6). He identified suffering from repetitive stress from typing, a knee problem, becoming

8    dizzy sometimes, allergies, COPD, and that he was tired and needed to make a doctor's

9    appointment. (Ex. 1 at ¶ 6). Ms. Stroh instructed him to make a doctor's appointment.

10   (Ex. 1 at ¶ 6).

11   Additionally, Mr. Glass has not identified any connection between the basis for

12   termination and his claimed disability. The decision to terminate his employment was

13   based on his failure to complete the PIP and his job performance. (Ex. 9 at ¶ 13; Ex. 16;

14   Ex. 17). ASIC North has provided legitimate and non-discriminatory reasons for its

15   employment actions. Mr. Glass cannot dispute the basis of ASIC North's actions. In fact,

16   there is no contemporaneous record supporting his claims of disability discrimination

17   other than Mr. Glass' conclusory allegations. This may be a pattern demonstrated by Mr.

18   Glass. (Ex. 21). Additionally, Mr. Glass did not inform his supervisors or technical leads

19   of any disability, so it cannot be argued that ASIC North discriminated against Mr. Glass

20   as claimed where it had no knowledge of his disability. Mr. Glass' discrimination claim

21   fails as a matter of law and summary judgment is appropriate.

22
     **B. Mr. Glass Has Failed to Exhaust His Administrative Remedies As to His**
     **Undisclosed Disabilities**
23

24   In addition to the claims of carpel tunnel, COPD, anemia, and asthma alleged in

25   the Complaint, Mr. Glass has also raised bone spurs and shoulder issues as claimed

26   disabilities during the course of discovery. (Doc. 1 at ¶ 7). Claimants establish federal

27   court jurisdiction by first exhausting their administrative remedies with the EEOC. *See*

28   *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990).  Incidents of discrimination not

1   included in an EEOC charge may not be considered by a federal court, unless the new

2   claims are "like or reasonably related to the allegations contained in the EEOC

3   charge." *See Green v. L.A. Cty. Superintendent of Sch*., 883 F.2d 1472, 1476 (9th Cir.

4   1989).

5          In determining whether an allegation is like or reasonably related to allegations

6   contained in a previous EEOC charge, the court inquires whether the original EEOC

7   investigation would have encompassed the additional charges.  *See EEOC v. Farmer*

8   *Bros. Co*., 31 F.3d 891 (9th Cir. 1994). Where claims are not so closely related that

9   agency action would be redundant, the EEOC must be afforded an opportunity to

10  consider disputes before federal suits are initiated. *Brown v. Puget Sound Elec.*

11  *Apprenticeship & Training Tr.,* 732 F.2d 726, 730 (9th Cir. 1984) (holding plaintiff failed

12  to exhaust administrative remedies by not filing second charge of discrimination). During

13  the course of discovery in this matter, Mr. Glass has now raised issues related to his

14  shoulders and bone spurs. (Ex. 20 at 102-05). Mr. Glass has not provided time frames for

15  the treatment or any documents supporting his claimed treatment. Neither the first nor the

16  second charge of discrimination identified such issues. As a result, Mr. Glass failed to

17  exhaust his administrative remedies as to his shoulders and bone spurs.

18          **C.  Mr. Glass Cannot Present Evidence to Support the Retaliation Claim**

19          Mr. Glass asserts a disability retaliation claim against ASIC North. (Doc. 1 at ¶ 5).

20  He claims that ASIC North retaliated against him when he filed the charge of

21  discrimination with the EEOC and interfered with his attempts to obtain employment. As

22  discussed in detail below, Mr. Glass does not have any evidence beyond his own

23  speculation and deductive reasoning that ASIC North took any action regarding his

24  attempts to gain employment. ASIC North addresses those claims separately and

25  incorporates that argument by this reference.

26          A plaintiff has the initial burden of making out a *prima facie* case of retaliation.

27  *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003). If a plaintiff is able to

28  do so, the burden shifts to the defendant to articulate a legitimate, non-discriminatory

1    reason for the adverse employment action. *Id.* If a defendant articulates such a legitimate

2    reason, the plaintiff must demonstrate that the reason was a pretext for a discriminatory

3    motive. *Id.*

4           A *prima facie* case of retaliation in violation of 42 U.S.C. § 12203(a) requires

5    engaging in an activity protected by statute, suffering adverse employment action, and a

6    causal connection between the protected activity and the adverse action. *Barnett v. U.S.*

7    *Air, Inc.*, 228 F.3d 1105, 1121 (9th Cir. 2000). A materially adverse action is one that

8    would dissuade a reasonable employee from making or supporting a charge of

9    discrimination. *Burlington N. Santa Fe. RR. Co. v. White*, 126 S. Ct. 2405, 2415 (2006).

10          Mr. Glass cannot show the requisite adverse employment action or a causal

11   connection between the protected activity and any adverse employment action. The

12   Written Warning and PIP cannot be considered retaliatory because they are dated May

13   18, 2016, and predate Mr. Glass' filing of the first charge of discrimination, dated May

14   20, 2016. (Ex. 13). On May 19, 2016, Ms. Stroh discussed the Written Warning and PIP

15   over the telephone and Ms. Stroh documented the conversation. (Ex. 1 at ¶ 3; Ex. 2). It

16   cannot be argued that the Written Warning and PIP is an adverse employment action that

17   dissuaded Mr. Glass from making or supporting a charge of discrimination because he

18   filed his first charge of discrimination two days later on May 20, 2016.

19          After Mr. Glass filed his first charge of discrimination, ASIC North engaged with

20   Mr. Glass and accommodated his sole request for an accommodation. Mr. Glass

21   requested ergonomic improvements to his work space. (Ex. 1 at ¶¶ 6-7; Ex. 6; Ex. 18; Ex.

22   19). Mr. Hughes of ASIC North performed an assessment of Mr. Glass' work space

23   around June 21, 2016, including providing him with a different chair. (Ex. 6 at 1).

24   Around June 22, 2016, Mr. Glass said that the replacement chair was giving him good

25   back support, but did not help with his wrists, so he requested a keyboard tray. (Ex. 18 at

26   1). On June 24, 2016, within two days of Mr. Glass' request, ASIC North ordered him a

27   keyboard tray. (Ex. 18 at 1) ASIC North accommodated Mr. Glass' only request for an

28   accommodation, a request for an ergonomic evaluation based on his work space due to

1    stress on his arms, hands, and wrists. (Ex. 20 at 79-80, 149). The Complaint confirms that

2    his only request was for the keyboard tray and ergonomic work station. (Doc. 1 at ¶ 12).

3        Based on Mr. Jorvig's reports as to Mr. Glass' performance, the K Glass PIP

4    Summary, and Mr. Glass' failure to successfully complete the PIP, the decision was made

5    to terminate Mr. Glass' employment on July 1, 2016. Mr. Jorvig, Mr. Hughes, and Ms.

6    Stroh, by telephone, participated in an exit interview with Mr. Glass, which Mr. Jorvig

7    documented. (Ex. 16). Mr. Glass was again not dissuaded from making a charge of

8    discrimination because he filed a second charge on December 23, 2016. (Ex. 7). As

9    demonstrated by the sworn testimony of Ms. Stroh and Mr. Jorvig and the

10   contemporaneous documents submitted, the decision to terminate Mr. Glass' employment

11   was based on his failure to successfully complete the PIP and improve his performance.

12   Moreover, Mr. Glass has not presented any contemporaneous record supporting his

13   retaliation claims. In the absence of adverse employment action and a connection

14   between any adverse employment action and engaging in protected activity, Mr. Glass

15   has failed to establish the essential elements of his claim and cannot maintain a retaliation

16   claim.

17       **D. Mr. Glass Cannot Provide Evidence to Support the Tortious Interference
         with Business Expectancy Claim**

18

19       Mr. Glass alleges that he would have obtained employment but did not as a result

20   of the prospective employers contacting ASIC North. Mr. Glass listed ASIC North on his

21   resume. (Ex. 20 at 124). He alleges that he interviewed at Apple and that he was told they

22   were really interested in him for the job and asked if he would take the job if they offered

23   it to him. (Ex. 20 at 122). Mr. Glass told them that he was really interested. (*Id.* at 122-

24   23). During the interview, they discussed his employment at ASIC North and they told

25   him that they were going to call ASIC North. (*Id.*) Mr. Glass did not receive a call back

26   so he called the recruiter, Stacy Castleberry, who hung up on him. (*Id.*) The recruiter did

27   not say that Mr. Glass had a negative reference, he merely said that Mr. Glass did not get

28   the job. (*Id.* at 151:19-21). Mr. Glass is not sure whether the Apple recruiter actually

1    contacted ASIC North or even referenced ASIC North. (*Id.* at 150:10-152:4).

2         Mr. Glass also had a job offer from Northrop Grumman. (*Id.* at 156:22-157:13).

3    Northrop Grumman made the offer and then completed a security screening. (*Id.* at 157).

4    Northrop Grumman told Mr. Glass they were pulling his offer because he did not pass the

5    security check. (*Id.*) Mr. Glass received files from the background check agency showing

6    that it verified all of his employment, he passed the drug test, but Northrop Grumman still

7    rescinded the job offer. (*Id.*)

8         To assert a claim for tortious interference, a plaintiff must allege (1) the existence

9    of a valid contractual relationship or business expectancy; (2) the interferer's knowledge

10   of the relationship or expectancy; (3) intentional interference inducing or causing a

11   breach or termination of the relationship or expectancy; and (4) resultant damages.

12   *Antwerp Diamond Exch. of Am., Inc. v. Better Bus. Bureau of Maricopa Cty., Inc.*, 130

13   Ariz. 523, 530, 637 P.2d 733, 739-40 (1981). A plausible claim for relief requires more

14   than the speculative hope of a business expectancy. *Dube v. Likins*, 216 Ariz. 406, 414, ¶

15   14, 167 P.3d 93, 99 (App. 2007). Here, Mr. Glass presents nothing more than his own

16   deductive reasoning. Mr. Glass cannot identify any individuals from ASIC North that

17   gave bad references to his prospective employers. (Ex. 20 at 122, 154:10-18). Mr. Glass

18   merely speculates that "[i]t could have been any of them." (Ex. 20 at 122). By contrast,

19   no manager or technical lead of ASIC North has been asked for a reference or provided

20   any information concerning Mr. Glass since he left its employment. (Ex. 1 at ¶ 13). Mr.

21   Glass also cannot present evidence of anything more than his own hope of a business

22   expectancy with any of the prospective employers. That is not enough to for a plausible

23   tortious interference claim.

24        Ultimately, Mr. Glass has no evidence of interference by ASIC North beyond his

25   own speculation. Conclusory allegations or mere assertions are not facts that a court can

26   consider in ruling on a motion for summary judgment. *See Taylor v. List*, 880 F.2d 1040,

27   1045 (9th Cir. 1989). Courts can consider only admissible evidence in ruling on a motion

28   for summary judgment. *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th

1 Cir. 1988). In the absence of evidence to support the requisite elements, the tortious

2 interference claim fails as a matter of law and summary judgment is appropriate.

3 **E.  Mr. Glass Has No Evidence to Support Punitive Damages**

4 Mr. Glass claims that he is entitled to punitive damages in relation to his tortious

5 interference claim. A plaintiff must be entitled to actual damages before being entitled to

6 punitive damages. *Med. Laboratory Management Consultants v. Am. Broadcasting*

7 *Companies, Inc.*, 306 F.3d 806, 826 (9th Cir. 2002). Mr. Glass has only presented

8 speculation and his own conclusion that ASIC North must have interfered with his

9 attempts to obtain employment because he thinks that two prospective employers may

10 have contacted ASIC North and that he did not obtain a job from them after thinking he

11 would.

12 Punitive damages require proof, by clear and convincing evidence, that the

13 defendant engaged in aggravated and outrageous conduct with an evil mind. *Hyatt*

14 *Regency Phoenix Hotel Co. v. Winston & Strawn*, 184 Ariz. 120, 132, 907 P.2d 506, 518

15 (App. 1995). Such situations occur where the defendant intended to injure the plaintiff or

16 where the defendant consciously pursued a course of conduct knowing that it created a

17 substantial risk of significant harm to others. *Rawlings v. Apodaca*, 151 Ariz. 149, 162,

18 726 P.2d 565, 578 (1986). Speculation and conclusory allegations cannot be the basis for

19 awarding punitive damages. Mr. Glass has no specifics regarding ASIC North and no

20 evidence of any action taken by ASIC North regarding Mr. Glass' attempts to obtain

21 employment. The undisputed evidence shows that ASIC North has not had contact with

22 any of Mr. Glass' prospective employers. (Ex. 1 at ¶ 13). He therefore cannot present

23 evidence of any way in which he was damaged as a result of any action by ASIC North.

24 Mr. Glass has not met his burden of proof as to punitive damages and ASIC North is

25 entitled to summary judgment.

26 **III.    Conclusion**

27 Summary judgment is appropriate where there are no disputed issues of material

28 fact. Mr. Glass has asserted discrimination and retaliation claims on the basis of his

1  disability. Mr. Glass alleges that he was discriminated and retaliated against on the basis

2  of his disability, but ASIC North's actions were solely based on his job performance. Mr.

3  Glass also asserts that ASIC North has tortiously interfered with his attempts to obtain

4  employment. He has not and cannot submit evidence beyond his own speculation about

5  ASIC North's alleged interference. In the absence of evidence to support his claims and

6  evidence cutting against his claims, ASIC North is entitled to summary judgment.

7

8          Dated this 15th, day of April, 2019.

9                                          GORDON REES SCULLY
                                           MANSUKHANI, LLP
10

11

12                                  By:    /s/ _Annelise M. Dominguez
                                           John L. Condrey
                                           Annelise M. Dominguez
13                                         Attorneys for Defendant
                                           ASIC North, Inc. a Vermont
14                                         Corporation

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on April 15, 2019, I electronically transmitted the attached

3    document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4    Notice of Electronic Filing to the following CM/ECF registrants:

5

6    Elizabeth D. Tate
     2953 North 48th Street
     Phoenix, AZ 85018-7749
7    attorneyelizabethtate@yahoo.com
     Attorney for Plaintiff Kevin W. Glass
8

9     *By:  Angelina Chavez*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28