**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kevin W Glass,<br><br>Plaintiff,<br><br>v.<br><br>AsicNorth Incorporated,<br><br>Defendant. | No. CV-18-00898-PHX-DLR<br><br>**ORDER** |

Before the Court is ASIC North's motion for summary judgment, which is fully briefed. (Docs. 43, 46, 49, 56).[1] ASIC North's motion for summary judgment is granted, as described below.

**I. Background**

This case arises from Plaintiff Kevin Glass's employment and termination at ASIC North. Mr. Glass began employment as a Senior Circuit Design Engineer with ASIC North, a design house and staffing company, on January 12, 2016. (Doc. 43-10 at 2.) On

---

[1] The Court does not consider the new evidence submitted in Plaintiff's untimely surreply. *EEOC v. Swissport Fueling, Inc.*, 916 F. Supp. 2d 1005, 1015 (D. Ariz. 2013); *Larson v. United Natural Foods West, Inc.*, No. CV-10-185-PHX-DGC, 2010 WL 5297220, at *2 (D. Ariz. Dec. 20, 2010) (citing LRCiv 56.1(m)(2)). The Court allowed Plaintiff the opportunity to file a surreply, by no later than November 11, 2019, to respond to the discrete issues raised in John Condrey's affidavit and its attachments. (Docs. 53, 55.) Instead, on November 12, 2019, Plaintiff filed a surreply that improperly introduces new evidence regarding Plaintiff's alleged disability. (Doc. 56.) Plaintiff cannot credibly attach a previously unseen report from Dr. Angerman and contend that Defendant is unprejudiced by its introduction at this late stage because Defendant had the opportunity to depose Dr. Angerman but did not do so. (*Id.* at 5.)

May 18, 2016, Integrated Circuit Design Manager Jeff Jorvig issued a written warning to Mr. Glass, citing performance concerns. (Doc. 43-14.) This written warning placed Mr. Glass on a 30-day Performance Improvement Plan ("PIP"). The PIP assigned Mr. Glass an engineering project and laid out daily milestones. (*Id.*) Mr. Glass's managers reviewed his progress weekly to monitor his improvement in the ability to reliably hit project markers, communicate with the team to resolve technical questions, recognize and respect the advice of team leads, improve his attitude and professionalism, document and present technical data, and perform at senior level. (*Id.* at 2.) The PIP specified that Mr. Glass was required to comply with the PIP and demonstrate immediate improvement or face termination. (*Id.*) Upon receipt of the written warning, Mr. Glass contacted Judy Stroh of Human Resources to dispute it. (Doc. 43-2 at 2.)

On May 20, 2016, Mr. Glass filed two charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on disability. (Doc. 43-9 at 2.) Neither the human resources department nor anyone else at ASIC North had any records indicating that Mr. Glass had a disability prior to receiving the charge. (Docs. 43-2; 43-5.) Around June 9, 2016, Mr. Glass requested ergonomic improvements to his work area to help with stress issues on his hands, wrists and forearms. (Doc. 43-6 at 2.) On June 21, 2016, Chris Hughes evaluated Mr. Glass's work station and gave him a replacement chair. (Doc. 43-24 at 1.) Mr. Glass, noting continued issues in his wrists, requested an under the desk pull out keyboard tray. (*Id.*) ASIC North ordered such a tray on June 28, 2016. (Doc. 43-20 at 2.) However, ASIC North terminated Mr. Glass effective June 30, 2016, citing Mr. Glass's continued substandard performance. (Doc. 43-18 at 2.)

Mr. Glass filed a second charge of discrimination on December 23, 2016, alleging discrimination based on retaliation, disability, and age. (Doc. 43-8.) His charge also asserts that ASIC North employees, since his termination, have given unfavorable references to prospective employers, thereby interfering with his ability to obtain permanent employment. (*Id.*) Mr. Glass filed his complaint in this Court on March 21,

2018. (Doc. 1.) The complaint asserts claims for disability discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA") under 42 U.S.C. §§ 12112 and 12203(a), and for tortious interference with business expectancy. On April 16, 2019, ASIC North filed its motion for summary judgment, which is now ripe.

**II. Legal Standard**

Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. The burden then shifts to the non-movant to establish the existence of a genuine and material factual dispute. *Id*. at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts[,]" and instead "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation and citation omitted).

**III. Analysis**

The Court will address each of Mr. Glass's claims, in turn.

**A. Disability Discrimination in Violation of § 12112**

The *McDonnell Douglas* burden-shifting framework applies to claims brought

under the ADA. *Snead v. Metro. Prop. Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2003). Under this framework, Mr. Glass must first establish a prima facie case of discrimination. If he adequately establishes a presumption of discrimination, the burden shifts to ASIC North to articulate a legitimate, non-discriminatory reason for its adverse employment action. If ASIC North satisfies this burden, Mr. Glass must then offer evidence that ASIC North's advanced reason constitutes mere pretext. *Aragon v. Republic Silver State Disposal*, 292 F. 3d 654, 658-59 (9th Cir. 2002) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

In order to establish a prima facie case of discrimination under the ADA, "[Mr.] Glass needs to show that (1) he is disabled under the Act; (2) he is qualified to perform essential functions of his job; and (3) that he suffered an adverse employment action because of his disability." *Glass v. Intel Corp.*, No. CV-06-1404-PHX-MHM, 2009 WL 649787, at *5 (D. Ariz. Mar. 11, 2009) (citing *Sanders v. Arneson Prods., Inc.*, 91 F.3d 1351, 1353 (9th Cir. 1996)).

Turning to the first prong, Mr. Glass must establish that he had a disability within the meaning of the ADA during the relevant time period. A person is disabled under the ADA if he has (1) a physical or mental impairment that substantially limits one or more major life activities; (2) a record of such impairment; or (3) is regarded as having such an impairment. *See* 42 U.S.C. § 12102(2). Mr. Glass fails to present admissible evidence that he had a disability within the meaning of the ADA at the time of his employment with ASIC North. In his complaint, Mr. Glass asserts that he suffered from carpel tunnel, chronic obstructive pulmonary disease ("COPD"), anemia, and asthma during the relevant period. (Doc. 1 at 2.) However, Mr. Glass has not provided any testimony from his doctor or medical records suggesting that he suffers from these impairments or that they substantially limit his activities. Rather, Mr. Glass presents the affidavit of Dr. Michael Wilmink, who diagnosed Mr. Glass with bone spurs on May 16, 2019. (Doc. 46-1.) It is undisputed that Mr. Glass neither mentioned bone spurs in his complaint nor disclosed to ASIC North, prior to this litigation, that he had bone spurs. Further, Dr. Wilmink has not

asserted that Mr. Glass's bone spurs are substantially limiting, or even that Mr. Glass suffered from bone spurs in 2016. Consequently, Mr. Glass fails to establish a prima facie case of discrimination under the ADA, and his claim under § 12112 fails as a matter of law.

**B. Retaliation in Violation of § 12203(a)**

The *McDonnell Douglas* burden-shifting framework similarly applies to Mr. Glass's ADA retaliation claim. *Snead*, 237 F.3d at 1093. In order to establish a prima facie case of retaliation under the ADA, Mr. Glass must show that (1) he engaged or was engaging in protected activity; (2) ASIC North subjected him to an adverse employment decision; and (3) there was a causal link between the protected activity and the employer's action. *Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir. 1987).[2]

Here, Mr. Glass alleges that ASIC North retaliated against him by terminating him in response to his filing of an EEOC charge.[3] The filing of an EEOC charge against an employer constitutes protected activity, *Ray v. Henderson*, 217 F. 3d 1234, 1240 (9th Cir. 2000), and termination is an adverse employment decision, *Gambini v. Total Renal Care, Inc.*, 486 F.3d 1087, 1094 (9th Cir. 2007). Further, because ASIC North terminated Mr. Glass little more than a month following the filing of his EEOC charge, Mr. Glass has

---

[2] The Ninth Circuit has adopted the Title VII retaliation framework for ADA retaliation claims. *See Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1121 (9th Cir. 2000) (en banc), *vacated on other grounds*, *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002).

[3] Mr. Glass asserts various other retaliatory acts allegedly committed by ASIC North, which the Court will briefly discuss here. First, Mr. Glass's contention that ASIC North retaliated against him for filing his EEOC charge by neglecting to provide reasonable accommodations fails because ASIC North evaluated the ergonomics of his work station and satisfied Mr. Glass's only requests for accommodation by replacing his chair and ordering him an under-desk pull-out keyboard tray. (Docs. 43-20, 43-24.)
Second, Mr. Glass's contentions that ASIC North retaliated against him for requesting reasonable accommodations by issuing the PIP fail because Mr. Glass presented no admissible evidence that he requested accommodations or was even disabled such that he required accommodations prior to the issuance of the PIP.
Third, any allegations concerning the placing of rat feces on Mr. Glass's chair, harassing early morning conferences, software unavailability, and post-termination unfavorable reference-giving lack admissible evidentiary support and are therefore rejected. *Liberty Lobby*, 477 U.S. at 248.
Finally, the Court rejects Mr. Glass's effort to assert, for the first time in his response to ASIC North's motion for summary judgment, a retaliation claim based on ASIC North's call to the police following Mr. Glass' termination. *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings.").

established a causal link based on temporal proximity. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of a protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'"); *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011) ("The causal link can be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and the adverse action."). Mr. Glass therefore has established a prima facie case of retaliation.

The burden now shifts to ASIC North to provide a non-retaliatory explanation for terminating Mr. Glass. ASIC North explains that it terminated Mr. Glass due to his poor work performance, as demonstrated by his failure to successfully complete his PIP. (Doc. 43 at 10.) Unsatisfactory job performance is a legitimate and non-discriminatory reason for terminating an employee. *Aragon*, 292 F. 3d at 661. Here, Mr. Glass demonstrated numerous work performance issues including poor communication,[4] limited comprehension,[5] and unwillingness to follow guidance and direction,[6] inept time-management,[7] and repeated submission of poor and incomplete[8] materials. (Doc. 43-14.)

---

[4] Ms. Stroh relayed, after first meeting Mr. Glass, "his attitude/behavior was unacceptable. . . . he doesn't listen (he tends to talk over you), he believes he knows more than we all do, and he is only concerned about what is wrong with everyone else's actions." (Doc. 43-3 at 2.) Because of these tendencies, ASIC North did not trust Mr. Glass to behave appropriately in front of customers and chose to remove him from projects that involved client interaction. (Docs. 43-3 at 2; 43-10 at 4.)

[5] For example, even though an employee "hosted screen (7) sharing sessions with [Mr. Glass] over a 2wk span to help him with his simulation environment," he struggled to comprehend. (Doc. 43-4 at 3.)

[6] Employees at ASIC North regularly expressed frustration with Mr. Glass's aversion to following directions: "Steve tried several times to point him in the right direction, but [Mr. Glass] was very reluctant to accept his design advice." (Doc. 43-4 at 2.) "We had a todo item here and he had not done it because . . . he saw no changes to the hierarchy required. We went around and around on this. He will need to put this together for sims anyway so it will be need[ed] in his library. Why didn't he just do it?" (Doc. 43-15 at 4.) "It seems he is continually looking for a reason to not do what was spelled out in the PIP." (Doc. 43-15 at 6.)

[7] Mr. Glass spent over eight weeks on a project intended to take three weeks. (Doc. 43-13 at 2.) The three additional projects he was supposed to be complete during that period had to be reassigned or otherwise handled. (*Id.*)

[8] The record is replete with evidence that Mr. Glass submitted subpar work product: Company Vice President Steve Stratz noted, in reference to a PIP assignment, "the package

ASIC North has met its burden by presenting that it terminated Glass due to his poor performance.

The burden now shifts to Mr. Glass to show that this reason is mere pretext. Mr. Glass fails to meet his burden. Mr. Glass generally does not dispute that his performance was poor. Rather, he first asserts without support that he did not successfully complete the PIP because ASIC North purposefully designed it so that it would be impossible to complete within the parameters.[9] Mr. Glass's mere conjectures are insufficient to create a genuine dispute of material fact. *Liberty Lobby*, 477 U.S. at 248 (internal quotations omitted) ("a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."); *McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1173 (9th Cir. 2016) (citation omitted) ("Arguments based on conjecture or speculation are insufficient" to preclude summary judgment.). Second, Mr. Glass suggests that pretext may be inferred from ASIC North's failure to give a verbal warning to Plaintiff before issuing its written warning and PIP in the pre-termination disciplinary process, thereby contravening of its own rules, policies, or procedures. (Doc. 46 at 2, 17.) However, ASIC North has no explicit rule, policy, or procedure that requires a verbal warning to be issued prior to a written warning or PIP. (Doc. 50-1 at 67-68.) Rather, the employee handbook makes clear that the disciplinary process is discretionary and all

---

that [Mr. Glass] delivered was unacceptable by any standard. I would have expected more from a college intern." (Doc. 43-3 at 3.) (citing among other deficiencies, lack of descriptions, un-labeled worksheets, and missing summaries and simulations). Jeff Jorvig during his weekly review opined, "[h]e had limited data to show. His simulation results were not in presentation form so we could not easily review them[.] It appears that he does not know how to use the wave viewer[.] It appears difficult for him to put together a clear package of data to substantiate his concerns and/or a proposed direction. . . . For the C tuning he stated that was not necessary and it's never done. Kenneth stressed the need to complete that and the PVT sims to prove it out. . . . This was just sloppy work in my opinion." (Doc. 43-15 at 6.)

[9] On the contrary, an ASIC North supervisor of the PIP "reiterated that the PIP milestones were certainly achievable, and even might be easy for [Mr. Glass]." (Doc. 43-3 at 2.) Similarly, Jeff Jorvig noted, "I was very familiar with the [] requirements of the PIP, and was confident that Mr. Glass could be successful if he applied himself and actually improved in the areas where his performance and attitude were found wanting." (Doc. 43-10 at 4.)

employees are at will. (*Id.*) In sum, Mr. Glass has not carried his burden of persuasion to show that ASIC North's alleged reason for termination was merely a pretext for a discriminatory motive. As a result, Mr. Glass's claim under § 12203(a) fails as a matter of law.

**C. Interference with Business Expectancy**

Under Arizona law, to assert a claim for tortious interference, Mr. Glass must establish: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of ASIC North; (3) intentional interference by ASIC North inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to Mr. Glass. *Antwerp Diamond Exchange of Am., Inc. v. Better Bus. Bureau of Maricopa Cty., Inc.,* 637 P.2d 733, 740 (Ariz. 1981) (citations omitted). Here, Mr. Glass asserts that ASIC North interfered with his ability to secure employment with Apple and Northrup Grumman by providing negative references to the companies. (Doc. 46 at 19.) Mr. Glass does not present any admissible evidence that Apple or Northrup Grumman contacted ASIC North, that ASIC North knew about Plaintiff's employment opportunities, or that ASIC North gave bad references to Apple or Northrup Grumann. Rather, the evidence shows that Northrup Grumman withdrew its employment offer due to Mr. Glass's failure to pass an employment-contingent background check (Doc. 50-2 at 50) and that Mr. Glass's relationship with Apple never surpassed the interview stage (Doc. 43-21 at 24). *See Dube v. Likins*, 167 P.3d 93, 99 (Ariz. Ct. App. 2007) ("A claim for tortious interference with a business expectancy is insufficient unless the plaintiff alleges facts showing the expectancy constitutes more than a mere 'hope.'"). As a result, Mr. Glass's tortious interference claim fails as a matter of law. Therefore,

//

//

//

//

//

**IT IS ORDERED** that ASIC North's motion for summary judgment (Doc. 43) is **GRANTED**. The Clerk of Court is directed to terminate any remaining deadlines and hearings, enter judgement in favor of Defendant, and terminate this case.

Dated this 19th day of November, 2019.

Douglas L. Rayes
United States District Judge